

FILED _____   RECEIVED _____
ENTERED _____   SERVED ON _____
COUNSEL/PARTIES OF RECORD

SEP 3 0 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
_____ DEPUTY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| FRANK STOFFELS and KAREN STOFFELS, ) | 3:08-CV-00468-ECR-GWF |
| Plaintiffs, ) | |
| vs. ) | <u>Order</u> |
| DLJ MORTGAGE CAPITAL INC.; SELECT ) | |
| PORTFOLIO SERVICING, INC.; ) | |
| SIGNATURE GROUP HOLDINGS p/k/a ) | |
| FREMONT REORGANIZING CORP. p/k/a ) | |
| FREMONT INVESTMENT AND LOAN BREA ) | |
| CALIFORNIA; MORTGAGE ELECTRONIC ) | |
| REGISTRATION SYSTEMS, INC; SLM ) | |
| CORPORATION a/k/a SALLIE MAE; and ) | |
| DOES I through X, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiffs in this case are homeowners facing foreclosure of
their property in Carson City, Nevada.  Now pending is Defendant
Signature Group Holdings p/k/a Fremont Reorganizing Corp. p/k/a
Fremont Investment and Loan Brea California's ("Fremont") motion for
summary judgment ("MSJ")(#199), joined by Defendants DLJ Mortgage
Capital Inc. ("DLJ") and Select Portfolio Servicing, Inc. ("SPS")
(#201).

### I. Factual Background

On April 10, 1998, Plaintiffs purchased a home in Carson City,
Nevada via a purchase money mortgage from Countrywide Home Loans
Inc. ("Countrywide").  (Second Am. Compl. ("SAC") ¶¶ 9, 13 (#139).)

1  In 2004, Plaintiffs refinanced the property by obtaining a refinance
2  mortgage from Countrywide at a lower interest rate.  (Id. ¶ 14.)  In
3  early 2006, Plaintiffs refinanced again by obtaining a negative
4  amortization refinance mortgage from IndyMac Bank, FSD. ("IndyMac")
5  at an even lower interest rate.  (Id. ¶ 15.)

6       On November 28, 2006, Plaintiffs received a letter titled
7  "Urgent Notice" regarding a "Negative Amortization Disclosure."
8  (Id. ¶ 17; Plaintiffs' Ex. 2, Ex. 9 at 8.)  The letter appeared to
9  be from IndyMac but was really a solicitation from First National
10 Mortgage Sources, LLC ("First National"), a brokerage firm.  (Second
11 Am. Compl. ¶ 19 (#49); Pls.' Resp. Ex. 2 (#208).)  The letter
12 indicated that Plaintiff's negative amortization loan was of a type
13 with "an extremely high rate of default," and asked Plaintiffs to
14 call "A.S.A.P" to discuss other loan options available.  (Id.)
15 Plaintiffs called the number in the letter and initiated the
16 negotiation of the loan at issue.

17      On December 20, 2006, Plaintiffs and Defendant Fremont entered
18 into a contract for a home loan ("2006 Loan") in the amount of
19 $300,900.00 with an adjustable interest rate set at the time at
20 5.50%, to be paid in full on January 1, 2037, the maturity date (SAC
21 ¶¶ 18, 25-31; Def.'s Mo. Summ. J. Ex. 3 (#199) ("MSJ").)  The result
22 was an initial monthly payment of $1473.95.  (SAC ¶ 21; MSJ Ex. 3.)
23 The Balloon Payment Rider attached to the promissory note provide
24 for full payment of any unpaid principle, all accrued and unpaid
25 interest, and all charges in a single payment on January 1, 2037.
26 (MSJ Ex. 3.)

27

28                                 2

1      Plaintiffs never made a single payment on the 2006 loan.  (SAC

2  ¶¶ 34, 40; Pls.' Resp. Ex. 10.)  Plaintiffs were notified on June 5,

3  2007 that they were in default and foreclosure proceedings would

4  commence against them.  (SAC ¶ 33.)  In order to avoid foreclosure,

5  Plaintiffs executed closing documents on a loan modification with

6  Fremont on August 29, 2007 ("2007 Modification"), a modification of

7  the original 2006 Loan.  (Id. ¶ 37.)  The 2007 Modification provided

8  for a fixed interest rate of 5.50% and capitalized the previously

9  unpaid interest and late fees.  (MSJ Ex. 4.)  The 2007 Modification

10  included an Errors and Omissions Compliance Agreement whereby

11  Plaintiffs agreed to cooperate in the correction of any clerical

12  errors made in the documents.  (Id.)  The 2007 Modification also

13  included a General Release and Indemnity Agreement releasing

14  Defendant from any claims and liability relating to or arising out

15  of the 2006 Loan.  (Id.)

16      The parties dispute the maturity date on the 2007 Modification.

17  The original documents Plaintiffs signed provided for a January 1,

18  2057 maturity date.  (Id.)  However, Defendant contacted Plaintiffs

19  a few days later indicating that a clerical error had been made in

20  the 2007 Modification which should have said January 1, 2037.  (Id.

21  Ex. 5.)  It appears that Plaintiffs refused to re-sign the 2007

22  Modification with the 2037 maturity date.  Again, Plaintiffs did not

23  make any payments.  (SAC ¶ 40.)  On March 21, 2008, a foreclosure

24  was again commenced on the property.  (Id. ¶ 53.)

25

26

27

28

3

1              **II.  Procedural Background**

2         Plaintiffs filed their complaint (#1) on September 2, 2008.   On

3    January 9, 2009, this Court issued a preliminary injunction (#36)

4    enjoining Defendants GRP Financial Service Corp. and GRP Loan, LLC.

5    ("GRP") from foreclosing on the property.   Plaintiffs later filed

6    their first amended complaint (#49) on February 11, 2009.   Defendant

7    Mortgage Electronic Registration Systems, Inc. ("MERS") filed a

8    motion to dismiss (#91) on June 25, 2009.   Defendant Fremont

9    Investment and Loan Brea California ("Fremont") also filed a motion

10   to dismiss (#92) on June 26, 2009.   On January 15, 2010, we granted

11   (#135) Defendant MERS' motion to stay (#134) the amended complaint

12   pending a decision on transfer by the Judicial Panel on

13   Multidistrict Litigation as to all claims involving the formation

14   and operation of the MERS system.   On January 26, 2010, we granted

15   (#136) Defendant MERS and Defendant Fremont's motions to dismiss

16   (#91, 92) as to all of Plaintiffs' non-MERS related claims.   On

17   January 27, 2010, the claims in this case related to the formation

18   and/or operation of MERS were transferred to the MDL court in the

19   District of Arizona (#137).   The claims that are unrelated to MERS

20   were simultaneously remanded to our jurisdiction.

21        On February 16, 2010, Plaintiffs filed their second amended

22   complaint (#139), the operative pleading in this case.   On May 10,

23   Defendants GRP and Fremont moved to dismiss (#150, 152) the

24   complaint.   By stipulation, we ordered (#153) Defendant MERS

25   dismissed without prejudice from the claims remanded from the MDL

26   court.   By order (#195) on March 2, 2011, we denied Defendant

27   Fremont's motion to dismiss (#150) and dismissed all claims against

28                                 4

1    GRP under our jurisdiction.  We also granted DLJ and SPS's motion to
2    substitute parties, with DLJ replacing Defendant GRP Loan LLC and
3    SPS replacing Defendant GRP Financial Services Corp.  On March 18,
4    2011, Defendants DLJ and SPS filed their answer to the second
5    amended complaint and counterclaim (#196) against Plaintiffs, and
6    Defendant Fremont filed its answer (#197).

7         On March 21, 2011, Defendant Fremont filed a motion for summary
8    judgment (#199) on Plaintiffs' remaining claims in this jurisdiction
9    for (1) Failure of Contract and (2) Fraud/Fraud in the Inducement.
10   Defendants DLJ and SPS joined (#201) that motion on March 30, 2011.
11   Plaintiffs filed their response (#208) and their answer (#209) to
12   the counterclaim (#196) on May 9, 2011.  Defendant Fremont filed its
13   reply (#215) on May 24, 2011, and Defendant DLJ and SPS joined
14   (#216) the reply on May 25, 2011.

15                        **III. Legal Standard**

16        Summary judgment allows courts to avoid unnecessary trials
17   where no material factual dispute exists.  Nw. Motorcycle Ass'n v.
18   U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court
19   must view the evidence and the inferences arising therefrom in the
20   light most favorable to the nonmoving party, Bagdadi v. Nazar, 84
21   F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment
22   where no genuine issues of material fact remain in dispute and the
23   moving party is entitled to judgment as a matter of law.  Fed. R.
24   Civ. P. 56(c).  Judgment as a matter of law is appropriate where
25   there is no legally sufficient evidentiary basis for a reasonable
26   jury to find for the nonmoving party.  Fed. R. Civ. P. 50(a).  Where
27   reasonable minds could differ on the material facts at issue,

28                                    5

1  however, summary judgment should not be granted.  <u>Warren v. City of</u>
2  <u>Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 116 S.Ct.
3  1261 (1996).
4       The moving party bears the burden of informing the court of the
5  basis for its motion, together with evidence demonstrating the
6  absence of any genuine issue of material fact.  <u>Celotex Corp. v.</u>
7  <u>Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met
8  its burden, the party opposing the motion may not rest upon mere
9  allegations or denials in the pleadings, but must set forth specific
10 facts showing that there exists a genuine issue for trial.  <u>Anderson</u>
11 <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Although the
12 parties may submit evidence in an inadmissible form--namely,
13 depositions, admissions, interrogatory answers, and affidavits--only
14 evidence which might be admissible at trial may be considered by a
15 trial court in ruling on a motion for summary judgment.  Fed. R.
16 Civ. P. 56(c); <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179,
17 1181 (9th Cir. 1988).
18      In deciding whether to grant summary judgment, a court must
19 take three necessary steps: (1) it must determine whether a fact is
20 material; (2) it must determine whether there exists a genuine issue
21 for the trier of fact, as determined by the documents submitted to
22 the court; and (3) it must consider that evidence in light of the
23 appropriate standard of proof.  <u>Anderson</u>, 477 U.S. at 248.  Summary
24 judgement is not proper if material factual issues exist for trial.
25 <u>B.C. v. Plumas Unified Sch. Dist.</u>, 192 F.3d 1260, 1264 (9th Cir.
26 1999).  As to materiality, only disputes over facts that might
27 affect the outcome of the suit under the governing law will properly
28

6

1 preclude the entry of summary judgment.   Disputes over irrelevant or
2 unnecessary facts should not be considered.   Id.   Where there is a
3 complete failure of proof on an essential element of the nonmoving
4 party's case, all other facts become immaterial, and the moving
5 party is entitled to judgment as a matter of law.   Celotex, 477 U.S.
6 at 323.   Summary judgment is not a disfavored procedural shortcut,
7 but rather an integral part of the federal rules as a whole.   Id.

8                            **IV. Discussion**

9     **A. The "Failure of Contract" Claim**

10     In alleging a cause of action for "failure of contract," it
11 appears that Plaintiffs are asserting that no contract was formed
12 between the parties.   (See SAC ¶¶ 69-71.)   Plaintiffs also allege
13 that they rescinded and/or repudiated the 2006 Loan, and that both
14 parties repudiated and/or rescinded the 2007 Modification.   (Id.)
15 Finally, Plaintiffs allege that there was no consideration on
16 Defendant's part for the 2007 Modification.   (Id. ¶ 74.)

17     To create an enforceable contract there must be an "offer and
18 acceptance, meeting of the minds, and consideration."   May v.
19 Anderson, 119 P.3d 1254, 1257 (Nev. 2005).   Moreover,

20         [w]hen a party to a written contract accepts . . . he is
           bound by the stipulations and conditions expressed in it
21         whether he reads them or not. . . . He who signs or accepts
           a written contract, in the absence of fraud or other
22         wrongful act on the part of another contracting party, is
           conclusively presumed to know its contends [sic] and to
23         assent to them, and there can be no evidence for the jury
           as to his understanding of its terms.
24
   Campanelli v. Conservas Altamira, S.A., 477 P.2d 870, 872 (Nev.
25
   1970).   Plaintiffs claim that they never agreed to the terms of the
26
   2006 Loan or the 2007 Modification, but the evidence is otherwise.
27

28                                    7

1  In their depositions, Plaintiffs admitted that they understood and
2  executed all the documents pertaining to the 2006 Loan and the 2007
3  Modification. (MSJ Ex. 1 at 58-61, 74, 76, 79-80, 92, 102-03, 107,
4  117-18; Ex. 2 at 13-14.) The existence of a contract is further
5  evidenced by Plaintiffs' numerous signatures and initials throughout
6  the loan documents. (See MSJ Ex. 3-4.) The 2006 Loan was executed
7  by Plaintiffs before a notary public. (SAC ¶ 27; MSJ Ex. 3 at 9.)
8  The 2007 Modification included a ratification and reaffirmation of
9  the 2006 Loan. (MSJ Ex. 4.)  Finally, in arguing that Defendant
10 "breached the agreement" (Pls.' Resp. at 6 (#208)), Plaintiffs admit
11 to an agreement.  The evidence is such that no reasonable juror
12 could conclude that the parties failed to form a contract.
13       Plaintiffs' argument that one set of their signatures on the
14 HUD-1 settlement statement that accompanied the 2006 Loan was
15 altered or forged by Defendant is unconvincing.  Plaintiffs contend
16 that the signatures on the form were "obviously . . . cut off and
17 pasted on the bottom."  (Id. at 3.)  However, the document, as
18 provided by both parties, is clearly a transmission of the original
19 document via facsimile, as evidenced by the time stamp and fax
20 number at the top of the document.  (Id. Ex. 2.)  It is readily
21 apparent from the face of the document that the irregularity in
22 Plaintiffs' signatures is due to the fax machine, as the lender's
23 signature is also cut off, and there is a similar irregularity
24 higher up on the page.  Furthermore, it strains credulity to believe
25 that Defendant would forge only this document connected to the 2006
26 Loan, and if so, that it would do such a poor job replicating
27 Plaintiffs' signatures.  Plaintiffs testified in their depositions
28

1 that they read, understood, and executed the 2006 Loan documents.

2 (MSJ Exs. 1-2). Moreover, Plaintiff Frank Stoffels admitted in his

3 deposition that he and his attorney "came up with" this argument

4 when they reviewed the form:

5    Q   And that's not your signature?
   A   That's not my complete signature, no.

6    Q   What do you mean your complete signature?
   A   That has been - - this was the cut-and-paste piece of

7        paper.

8    ...

   A   I did not sign this piece of paper.  This was placed

9        on here.
   Q   How do you know that was placed on there?

10    A   Looking through the information with my attorney, we
       came up with this and looked at it and saw that the

11        signatures had been cut off.

12    ...

   Q   On all three signatures.  Correct?

13    A   Yes.
   Q   And you and [your attorney] came up with that idea?

14    A   We came up with the - - with the thought that it had
       been cut and pasted, yes.

15
(Id. Ex. 1 at 64:5 - 65:10.)  For these reasons, no reasonable juror

16
could conclude that Defendant forged the HUD-1 Settlement Statement.

17
Furthermore, the contract did not fail for this reason.

18      Plaintiffs further argue that Defendant provided no

19 consideration for the 2007 Modification.  "To constitute

20 consideration, a performance or return promise must be bargained

21 for.  A performance or return promise is bargained for if it is

22 sought by the promisor in exchange for his promise and is given by

23 the promisee in exchange for that promise."  Pink v. Busch, 691 P.2d

24 456, 459 (Nev. 1984) (quoting Restatement (Second) of Contracts

25 § 71(1), (2) (1982)).  This bargained-for exchange requires a

26 mutuality of obligation: "unless both parties to a contract are

27

28                           9

1 bound, neither is bound." Serpa v. Darling, 810 P.2d 778, 781 (Nev.

2 1991).  "Consideration may be any benefit conferred or any detriment

3 suffered . . . ., and the law will not enter into an inquiry as to

4 its adequacy." Nyberg v. Kirby, 188 P.2d 1006, 1010 (Nev. 1948)

5 (citations omitted).

6        Even viewing the evidence in the light most favorable to

7 Plaintiffs, it is clear that Defendant provided consideration for

8 the 2007 Modification, contrary to the allegations in the second

9 amended complaint.  The 2007 Modification provided for a fixed

10 interest rate where Plaintiffs were subject to an adjustable rate

11 under the 2006 Loan.  (MSJ Exs. 3-4.)  Furthermore, the 2007

12 Modification capitalized the unpaid interest and penalties,

13 providing Plaintiffs with a fresh start on the loan at a time when

14 Defendant was entitled to foreclose on the property due to total

15 nonpayment.  (Id.)  For these reasons, the 2007 Modification did not

16 fail due to lack of consideration.

17        **1. The 2007 Modification Maturity Date**

18        Plaintiffs claim that the 2007 Modification failed because the

19 parties failed to agree on the Maturity Date.  Plaintiffs claim, and

20 the signed 2007 Modification shows, that January 1, 2057 was the set

21 maturity date.  (MSJ Ex. 4.)  Defendants argue that the date was a

22 clerical error and should have read January 1, 2037.

23        With the exception of Plaintiffs' allegations, the evidence

24 shows that the 2057 date was a typo, and the 2007 Modification

25 should have read 2037.  The maturity date in the original 2006 Loan

26 was January 1, 2037.  (MSJ Ex. 3.)  The 2007 Modification was an

27 amendment of the 2006 Loan, providing that "[e]xcept as otherwise

28                                    10

1  specifically provided in this Agreement, the Note and Security
2  Instrument will remain unchanged, and Borrower and Lender will be
3  bound by, and comply with, all of the terms and provisions thereof,
4  as amended by this Agreement.'" (Id. Ex. 7 at ¶ 6.) Therefore, to
5  the extent that the parties did not agree to the 2057 date, as
6  Plaintiffs contend Defendant did not, the 2037 date in the original
7  2006 Loan should control. Considering the contract as a whole, see,
8  e.g., Siggelkow v. Phoenix Ins. Co., 846 P.2d 303, 304 (Nev. 1993),
9  it appears that 2057 was a clerical error. Even when viewed in a
10 light most favorable to Plaintiffs, the other evidence confirms that
11 interpretation,[2] as outlined below.
12      Within days of the execution of the documents and in accordance
13 with the Errors and Omissions Agreement contained within the 2007
14 Modification (MSJ Ex. 4), Defendant sent Plaintiffs a letter asking
15 the Plaintiffs to re-sign the 2007 Modification due to a "typo error
16 on [the] maturity date." (MSJ Ex. 5.) Moreover, the letter
17 proposing the 2007 Modification lists in detail the numerous changes
18 to be made to the 2006 Loan, with no mention of a change in the
19 maturity date. (Pls.' Resp. Ex. 9 at 6-7 (#208)):

20      Based on our review of your concern and the loan file we
        have proposed to you the following resolution.
21

22
23      [1] For this reason, the 2007 Modification was unambiguously a
        modification and affirmation of the 2006 Loan and could not possibly
24      be considered a repudiation of the 2006 Loan, as alleged by
        Plaintiffs. (See SAC ¶ 70).
25
        [2] Parol evidence is admissible to show a clerical error or
26      mistake. Booth v. Tiernan, 109 U.S. 205, 207-08 (1883); see also
        State ex rel. List v. Courtesy Motors, 590 P.2d 163, 165 (Nev. 1979)
27      (stating the parol evidence is admissible to determine intent when the
        written contract is ambiguous).
28
                                    11

1          1.)   Capitalize the amount of $7,412.00 for the
                 revolving debt and the delinquent interest

2          2.)   The next payment due on your loan will be
                 09/01/2007

3          3.)   Change the rate on your loan from an adjustable
                 rate to a fixed rate

4          4.)   Fix the interest rate at the original rate of
                 5.50% for the remaining term of your loan

5          5.)   Waive all fees associated with the delinquent of
                 the loan to include late charges, property

6                 inspection fees, attorney fees and costs.
          6.)   The new principal balance will be $319,272.91

7          7.)   The new payment would be $1,755.16 this amount
                 includes $1,567.44 for principal and interest

8                 and $187.72 for taxes and insurance.  This is an
                 increase of $93.49.

During our conversation on July 20, 2007, you agreed to the above terms and a modification agreement was sent to your home.

Noticeably absent from this letter proposing the 2007 Modification is any mention of a change in maturity date.  The cover letter to the 2007 Modification likewise does not mention a change in the maturity date, but states only the interest rate and monthly payment.  (Id. Ex. 6.)  The 2057 maturity date alleged by Plaintiffs is inconsistent with all other evidence of the parties' intent.

Plaintiffs repeatedly claim that the shift to a 2037 maturity date required a larger monthly payment than was stated in the 2007 Modification (SAC ¶ 38; Pls.' Resp. at 4, 8, 14 (#208).)  However, this is simply not the case.  The monthly payment for principal and interest provided for in the 2007 Modification is $1524.59.  The cover letter to the 2007 Modification agreed that the principal and interest payment would be $1524.59, plus a monthly escrow collection of $187.72 (Pls.' Resp. Ex. 6 (#208)), for a total of $1712.31 due every month.  Plaintiff Frank Stoffels averred in his affidavit that

12

1  Plaintiffs' obligation under the 2007 Modification was "$1712.00."
2  (Id. Ex. 5 at ¶ 31.)   The agreed-to payment amount did not change,
3  showing that it was calculated according to a 2037 maturity date.
4  Plaintiffs' claim that "the monthly payment went from approximately
5  $1700 to over $2100 by that change of term" (Pls.' Resp. at 14) is
6  belied by the evidence.  The first payment notice from Defendant
7  after the execution of the 2007 Modification provided for a total
8  payment of $1712.31, exactly what Plaintiffs agreed to.  (Id. Ex.
9  5.7[3].)   On June 16, 2008, Defendant sent Plaintiffs a letter
10 explaining that correcting the maturity date did not change the
11 payment amount, the interest rate, or the unpaid balance.   (Id. at
12 9.)   Even when viewed in the light most favorable to Plaintiffs, the
13 evidence is clear that the 2037 maturity date did not change
14 Plaintiffs' monthly payment, and that they agreed to a payment for
15 that amount.
16     Finally, even if the dispute over the maturity date invalidated
17 the 2007 Modification, there is still a valid and binding contract
18 between the parties comprised of the original 2006 Loan with a 2037
19 maturity date.   Though the Court has engaged in a careful analysis
20 of the 2007 Modification, its failure or otherwise is immaterial to
21 Plaintiffs' claim, given the existence of the original contract.
22 For this reason alone, Plaintiffs' Failure of Contract claim must
23 fail.
24
25
26    [3] Plaintiffs have included with their Response Exhibit 5,
   Affidavit of Frank Stoffels, which itself has a number of exhibits
27 attached.   With the notation Ex. 5.7, the Court refers to Exhibit 7
   to the Affidavit.
28                                     13

1

2  B. The "Fraud/Fraud in the Inducement" Claim

3       In order to prove a common-law fraud or fraud in the inducement

4  claim in Nevada, a plaintiff must prove the following five elements

5  by clear and convincing evidence:

6       1.   A false representation made by the defendant;
        2.   Defendant's knowledge or belief that the
7             representation is false (or insufficient basis for
             making the representation);
8       3.   Defendant's intention to induce the plaintiff to act
             or to refrain from acting in reliance upon the
9            misrepresentation;
        4.   Plaintiff's justifiable reliance upon the
10           representation; and
        5.   Damage to the plaintiff resulting from such reliance.
11
Bulbman, Inc. v. Nevada Bell, 825 P.2d 588, 592 (Nev. 1992)(citing
12
Lubbe v. Barba, 540 P.2d 115, 117 (Nev. 1975)); see also J.A. Jones
13
Constr. Co. v. Lehrer McGovern Bovis, Inc., 89 P.3d 1009, 1017 (Nev.
14
2004).
15
       Plaintiffs first allege that Defendant committed fraud in
16
representing to Plaintiffs that they were qualified for the loan,
17
and that they would be eligible for refinancing if they could not
18
make their payments (SAC ¶ 116.)  Plaintiffs further allege that
19
Defendant failed to disclose the terms and risks of the loan, and
20
that Plaintiffs and others like them "all across the United States"
21
were not qualified for their loans.  (Id. ¶¶ 117-18.)  Finally,
22
Plaintiffs claim that Defendant failed to disclose the nature of the
23
increases in interest rate in a way that Plaintiffs understood.
24
(Id. ¶ 120.)
25
       Summary judgment is proper where at least one essential element
26
of a claim for a relief is absent, rendering all other facts
27

28                                    14

1   immaterial.   Plaintiffs fail to raise a genuine issue as to whether

2   Defendants made a false representation.   First, Plaintiffs have

3   produced no evidence that Defendant misrepresented that they were

4   qualified for the loan.   Similarly, they have produced no evidence

5   that Defendant represented that Plaintiffs could afford the loan.

6   Second, the statement that Plaintiffs would be able to refinance if

7   they could not make their payments proved true: Plaintiffs were able

8   to refinance the 2006 Loan via the 2007 Modification.   Third, the

9   evidence shows that all terms of the 2006 Loan, including the

10  adjustable rate mortgage and its consequences, were in fact fully

11  disclosed in the loan documents.   (See MSJ Ex. 3.)   Moreover,

12  Plaintiffs have testified extensively in their depositions that they

13  read and understood the 2006 Loan.   (Id. Ex. 1, 2.)

14       Finally, Defendant was under no obligation to disclose the

15  risks of the loan and whether Plaintiffs could afford it:

16       Although the Nevada Supreme Court has not ruled on the
         issue, this Court and the Ninth Circuit Court of Appeals
17       have predicted that the Nevada Supreme Court would hold
         that a lender does not owe a fiduciary duty, as "an arms-
18       length lender-borrower relationship is not fidcuiary in
         nature, absent exceptional circumstances."
19
    Megino v. Linear Financial, No. 2:09-CV-00370, 2011 WL 53086 at *5
20
    (D. Nev. Jan. 6, 2011) (quoting Yerington Ford, Inc. v. Gen. Motors
21
    Acceptance Corp., 359 F.Supp.2d 1075, 1090 (D.Nev. 2004), overruled
22
    on other grounds by Giles v. Gen. Motors Acceptance Corp., 494 F.3d
23
    865 (9th Cir. 2007)); see also Renteria v. United States, 452
24
    F.Supp.2d 910, 922-23 (D. Ariz. 2006) (holding that borrowers cannot
25
    establish the reliance element of their claim because lenders have
26
    no duty to determine the borrower's ability to repay the loan); Oaks
27

28                                    15

1 Mgmt. Corp. v. Superior Court of San Diego Cty., 51 Cal. Rptr. 3d

2 561, 570 ("[A]bsent special circumstances . . . a loan transaction

3 is at arms-length and there is no fiduciary relationship between the

4 borrower and the lender.") (citations omitted). Where an essential

5 element of a claim for relief is absent, the facts as to other

6 elements are rendered immaterial and summary judgment is proper.

7 Celotex, 477 U.S. at 323. Because Plaintiffs have failed to

8 establish the first element of their fraud claim, Defendants are

9 entitled to judgment as a matter of law.[4]

10                          **V. Conclusion**

11        Plaintiffs have failed to produce any genuine issue of material

12 fact on their two claims remaining in this jurisdiction for "failure

13 of contract" and fraud.  The evidence conclusively establishes the

14 existence of a valid contract between the parties and an absence of

15 fraud such that no reasonable juror could find otherwise.  As such,

16 Defendants are entitled to judgment as a matter of law.

17

18

19

20        [4] Defendants also argue they are entitled to summary judgment
because Plaintiffs signed a release of all liability in connection
21 with the loan when they executed the 2007 Modification. (See MSJ at
19-21.)  Because we grant summary judgment on other grounds, we need
22 not address the validity of the release nor Plaintiffs argument that
it was substantively, but not procedurally, unconscionable. Moreover,
23 in order for a court to exercise its discretion to refuse to enforce
a contract as unconscionable, generally both procedural and
24 substantive unconscionability must be present.  Burch v. Second
Judicial District Court, 49 P.3d 647, 650 (Nev. 2002).  To the extent
25 that Plaintiffs argue they signed the release under economic duress,
the Court notes that the exercise of a legal right to foreclose does
26 not constitute a wrongful act or threat for the purposes of economic
duress. See In re Desert Enters., 87 B.R. 631, 633-34 (Bankr. D. Nev.
27 1988).

28                              16

1      **IT IS, THEREFORE, HEREBY ORDERED** that Defendant Fremont's

2   motion for summary judgment (#199), joined by Defendants DLJ and SPS

3   (#201), is **GRANTED** as to Defendants Fremont, DLJ, and SPS.

4

5

6   DATED: September **30**, 2011.

7

8                                    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    17